By the Covet.—U’Gorman, J.
The plaintiffs are partners doing business as advertising agents in the city of New York. The defendants are a corporation engaged in the manufacture of pianos in that city. In November, 1885, the plaintiffs entered into a contract in writing with the defendants to procure for defendants contracts with publishers of weekly newspapers in the United States, not to exceed in number one thousand, for the publication in their newspapers of copies of defendants’ business card for a period of six months. For procuring these contracts, plaintiffs were to receive, in each instance, five dollars from the defendants. In each instance, the contract was to be made between the publisher and the plaintiffs, in a specified form agreed on between plaintiffs and defendants, and in each instance, that contract was to be assigned to defendants by the plaintiffs, by indorsement on the contract. The contract between the plaintiffs and defendants also provided that, if requested by “ Baus & Co.” (the defendants), a member of the firm of “ Allen Bros.,” shall furnish the assignee (the defendants) with an affidavit stating that he verily believes said contract to be in all respects genuine ; but if such request he not made within ten days after delivery of any such contract, the affidavit shall be held to be waived, and any such publisher’s contract shall in either event, be accepted as prima facie evidence that it is, in all respects, genuine.
The plaintiffs did procure certain contracts with publishers and delivered them duly assigned to the defendants, and were paid for the same at the rate provided for in the contract.
Subsequently, however, in May, 1886, plaintiffs tendered to the defendants papers purporting to be four *449 hundred and twenty of such contracts, duly assigned to them, with copies of newspapers containing defendants’ advertisement, but the defendants refused to accept said papers, or any of them. No request was made by defendants for any affidavit of a member of plaintiffs’ firm. The plaintiffs have brought this action against the defendants for this alleged breach of contract.
At the trial, the plaintiffs’ counsel offered, as evidence, 420 papers which he claimed to be 420 contracts with publishers, and 420 newspapers, said to contain the advertisements of defendants’ business, as called for by the contracts. Objection was made by defendants’ counsel to the admission of these papers in evidence, without the usual proof of the due execution thereof as required by law.
The objection was sustained and exception taken on behalf of the plaintiffs.
The learned trial judge held that the contracts should be proved to be publishers’ contracts. The question to be considered on this appeal is, whether by the special terms of the agreement between plaintiffs and defendants that “any such publisher’s contract shall be accepted as prima facie evidence that it is in all respects genuine”; the law and rules of evidence are in this case to be superseded by a rule made by the parties and specially applicable to this case.
Before deciding that question in the affirmative, this court should be well satisfied that such was the actual intention of the parties, as ascertained by a careful and strict construction of the language and purpose of the contract itself.
The result of this interpretation of the contract would be, that on presentation to the defendants of each paper purporting to be a publisher’s contract with the affidavit of one of the plaintiffs’ firm (if requested) that he verily believed the contract to be, in all respects, genuine, the defendants would be bound to accept the contract as prima fade genuine, and pay plaintiffs *450 for each contract five dollars. The defendants would also be bound, as provided in the contract between them and the plaintiffs, to provide each publisher with a piano of defendants’ make, of which the regular price was $900 cash, for $250 cash. If that, however, were the actual agreement, the defendants were, of course, bound by it.
The question here is what are the proper construction and interpretation of these words in the contract:— “Any such publisher’s contract shall be accepted as prima facie evidence that it is, in all respects, genuine.”
The first essential quality of the paper presented was clearly that it should be a publisher’s contract, and unless that fact were admitted or proved, the paper was not admissible as prima facie evidence of anything, even as between the parties; and it could not be admitted as evidence at a trial, in a court of law, without due proof according to law, that it had been duly executed by a publisher.
The learned trial judge so held, and his ruling was right.
The laws of evidence in courts of justice are rigid, and their wisdom and efficacy have been tested and proved by long use. To allow them to be superseded or relaxed to meet a special case, would be to unsettle established rules, and therefore the courts will not permit it to be done by contract, except where the contract is positive and free from ambiguity and not against public policy.
In the case at bar, however, the proper construction of the contract renders all such antagonism unnecessary. The contract does not provide that any paper presented to defendant by plaintiffs shall be, of itself prima facie evidence that it is genuine, but only such paper as shall be a publisher’s contract; and that fact should have been proved in the case at bar, as is required in *451 every other case, where a paper purporting to be a contract is put in evidence.
Plaintiffs’ exceptions should be overruled and judgment absolute ordered for defendants, dismissing plaintiffs’ complaint with costs.
The appeal from the order dismissing the complaint and directing plaintiffs’ exceptions to be heard in the first instance at the General Term, should be dismissed as wholly unauthorized.
Freedman, J., concurred.